IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

DAVID HEMBREE, individually, and as )
representative of all others similarly situated, )
)
          Plaintiff, )
)
v. ) Case No. 08-6094-CV-SJ-HFS
)
MID-CONTINENT TRANSPORT, INC. and )
JOHN W. SPENCER, )
)
          Defendants. )

**MEMORANDUM AND ORDER**

Defendants seek summary judgment rejecting the overtime pay claims of opt-in plaintiffs (drivers) employed by the corporate defendant, Mid-Continent Transport, Inc., contending they are untimely filed. If the alleged violation was not shown to be willful, and is thus subject to the two-year statute of limitations, the claims are untimely. If subject to the three-year statute, applicable to willful violations of the wage and hour law, they would be timely in part under a prior ruling of this court as to tolling. Doc. 59. Even if a submissible claim of willfulness is available to plaintiffs, defendants ask me to reconsider and withdraw my earlier tolling calculation - - which would result in the claims being untimely even if there were a willful violation. I now rule for defendants on the willfulness issue, and need not reconsider tolling.

**I**.

Willful violations, under the statute, have been defined by the Supreme Court as violations that

a defendant employer realized were occurring or were ignored through "reckless disregard" of the legal requirements. McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988). Although the courts exercise summary judgment authority cautiously, particularly where, as here, mind-reading is involved, willfulness can often be determined on summary judgment papers, in favor of either claimants or employers. Pignataro v. Port Authority of New York and New Jersey, 593 F.3d 265, 273 (3rd Cir. 2010); Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana St. University, 579 F.3d 546, 552-3 (5th Cir. 2009); Acton v. City of Columbia, Mo., 436 F.3d 969, 975 (8th Cir. 2006); Compare, Lanktree v. I-70 Towing, LLC, 2011 WL 4729726 (W.D.Mo.).

This case involves a statutory exemption relating to motor carriers that was in effect prior to 2005 legislation and has now been reinstated. See, Kautsch v. Premier Communications, 502 F.Supp.2d 1007, 1012 (W.D.Mo. 2007); Loyd v. Ace Logistics, LLC, 2008 WL 5211022 (W.D.Mo.). Smaller size vehicles of the sort plaintiffs drove were exempt before August, 2005, covered thereafter, and exempted again in 2008, as described in Loyd.

## II.

The pertinent undisputed facts are as follows: The employer, which is no longer operational, has transported packages from facilities in St. Joseph, Missouri, Lincoln and Grand Island, Nebraska, and Moline, Illinois. Vehicles used by the plaintiff drivers have a weight of less than 10,000 pounds. Before the enactment of legislative amendments in August, 2005, the truck operations were exempt from the Fair Labor Standards Act irrespective of weight. From August, 2005, by reason of the statutory amendment, the truck operations exemption applied only to larger trucks, over 10,000 pounds. The defendant corporation's principal officer, John W. Spencer, checked the wage and hour regulations when the company started, in 1989, and again in the mid-1990s, when overtime was voluntary. In the

late 1990's the employees voted to trade overtime pay for an across-the-board rate increase. Spencer checked the legal status of the overtime obligation with legal counsel, and was advised the drivers were exempt. In early 2005, the Teamsters Union was designated as the collective bargaining representative, and Spencer rechecked to confirm the exempt status of the operations. Counsel confirmed (mistakenly) the exemption in December, 2005, after the union sought overtime in collective bargaining negotiations. Personally or through counsel the exemption was thus checked at least four times since 1989.

In August, 2006, plaintiff Hembree was employed as a driver, and at some time began asserting to Spencer that overtime should be paid. Spencer advised him that he had confirmed the exemption from wage and hour obligations and neither Hembree nor any other driver questioned the statutory exemption issue as such, but Hembree did continue to argue with Spencer about a generalized claimed entitlement to overtime pay. Neither Spencer nor Hembree was aware of the statutory change in August, 2005.

Plaintiffs fail to cite any conflicting source of publicized information, such as trade journals, trade association notices, Department of Labor notices before 2007, or Teamster representations as to a change in the law.[1]

After independent inquiry by the company manager in St. Joseph in 2007, Spencer learned for the first time on about June 16, 2007, that the overtime exemption may have been changed. In September, 2007, the company began paying overtime. A Labor Department inquiry or audit began later in 2007.

Various plaintiffs have expressed opinions that Spencer knew of the repeal of the exemption at some time after it occurred, but before June, 2007. Such opinions appear to be entirely speculative and are not admissible in evidence.

---

[1]This does seem surprising, but plaintiffs have apparently been unable to uncover any sort of prompt notice.

The issue as to a willful violation would be whether Spencer, acting for the company, was recklessly ignorant of the statutory change in August, 2005, when he had repeatedly checked and rechecked the status of the exemption, including twice seeking the advice of counsel, most recently in December, 2005. I cannot conclude that a reasonable fact-finder would find recklessness under these circumstances. Most pertinent is that the Teamsters Union, charged with representing the drivers and presumably having good sources of information, never asserted a change of law or that there was mandatory coverage, and the employee who was most insistent on seeking overtime and asserting a duty to pay overtime, gave no authority for his request, made no reference to the statutes, either specifically or generally, did not claim a change of law, and was apparently unaware of the change. Even if it was negligent for Spencer to fail to reexamine the issue in late 2006 or early 2007 because one employee was making an assertion of coverage, I am satisfied that no reasonable jury could condemn the conduct as reckless, under the circumstances that are not in dispute.

Accepting for present purposes the testimony of various plaintiffs that Hembree frequently raised the subject with Spencer, at no time did he claim that the statutory exemption known to and referred to by Spencer was no longer in effect. It would seem that he simply relied on his concept of what was fair and the common knowledge that many workers are subject to the wage and hour law. If he had reported a rumor or having read something about a change in law there might have been a sound claim of negligence, for Spencer not to recheck with counsel or otherwise, but Hembree said nothing to make Spencer suspect his prior information was no longer correct. I doubt that Spencer could be considered negligent under the circumstances here, and certainly his inaction cannot be fairly classified as a reckless violation of law.

Neither party has cited any precedent closely on point and I have found none. While a jury sympathetic to the drivers might favor them, I am satisfied there is no common sense analysis that

would conclude there was reckless disregard of their overtime rights, which were only in effect for a brief period.[2]

The two-year statute of limitations would thus be a bar to a recovery for all opt-in plaintiffs since the cut-off is the same month when overtime payments began (Doc. 59), and the motion for summary judgment (Doc. 84) is GRANTED in favor of defendants on the claims of all plaintiffs other than David Hembree.

It is SO ORDERED

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

November  22 , 2011

Kansas City, Missouri

---

[2] I acknowledge my opinion is somewhat subjective, an exercise in educated judgment - but is not unlike the approach often used by trial and appellate judges in determining the submissibility of punitive damages - not that the tests are necessarily comparable.